**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In Re:<br><br>SOFIA PALMA,<br><br>Debtor. | NO. 14-16136<br><br>Chapter 7<br><br>Honorable Judge Bruce W. Black |

### NOTICE OF MOTION

TO:   William A. Cooper, CEO, TCF National Bank, 2508 South Louise Avenue, Sioux Falls, SD 57106 (Via U.S. First Class Certified Mail)
Joji Takada, Chapter 7 Trustee (Via ECF)

PLEASE TAKE NOTICE that on April 17, 2015 at 9:00 a.m., the undersigned will appear before the Honorable Bruce W. Black at the **Joliet City Hall, 150 West Jefferson Street, 2nd Floor, Joliet, Illinois 60432** in and will then and there present the attached **DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §362 FOR VIOLATIONS OF THE AUTOMATIC STAY, 11 U.S.C. §524 FOR VIOLATIONS OF THE DISCHARGE INJUNCTION, AND FED. R. BANKR. P. 9020 SEEKING SANCTIONS FOR CIVIL CONTEMPT AGAINST TCF NATIONAL BANK,** at which time you may appear if you so choose.

### Certificate of Service

I, Mohammed, hereby certify that I caused a copy of this notice to be served to William A. Cooper via U.S. First Class Certified Mail and to Joji Takada via ECF on April 1, 2015 before the hour of 5:00 p.m. from the office located at 900 Jorie Blvd., Ste 150, Oak Brook, IL 60523.

**BY:  /S/ MOHAMMED O. BADWAN**
Mohammed O. Badwan, Esq.
*Counsel for Debtor*
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Suite 150
Oak Brook, Illinois 60523
Phone: (630) 575-8181
Fax: (630) 575-8188

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In Re: <br><br> Sofia Palma, <br><br> Debtor | NO. 14-16136 <br><br> Chapter 7 <br><br> Honorable Judge Bruce W. Black |

**DEBTOR'S MOTION PURSUANT TO 11 U.S.C. §362 FOR VIOLATIONS OF THE AUTOMATIC STAY, 11 U.S.C. §524 FOR VIOLATIONS OF THE DISCHARGE INJUNCTION, AND FED. R. BANKR. P. 9020 SEEKING SANCTIONS FOR CIVIL CONTEMPT AGAINST TCF NATIONAL BANK**

**NOW COMES** Sofia Palma ("Debtor"), by and through her attorneys, SULAIMAN LAW GROUP, LTD., bringing this Motion Pursuant to 11 U.S.C. §362 for Violations of the Automatic Stay, 11 U.S.C. §524 for Violations of the Discharge Injunction, and Fed. R. Bankr. P. 9020 Seeking Sanctions for Civil Contempt Against TCF National Bank ("TCF") for Violations of the Discharge Injunction, and in support thereof, stating as follows:

## JURISDICTION

1. The Court has subject matter jurisdiction over this proceeding pursuant to 11 U.S.C. §§ 105, 524, 362 and 28 U.S.C. §§ 157 and 1334. This proceeding arises out of and is related to the above-captioned Chapter 7 case under Title 11.

2. This a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(1) & (2).

## PARTIES

3. Sofia Palma was a Debtor under Chapter 7 of Title 11 of the United States Code in Case Number 14-16136 filed on April 29, 2014, in the Northern District of Illinois.

4. TCF National Bank is a financial institution incorporated in Minneapolis, Minnesota, and is governed by the Federal Deposit Insurance Corporation ("FDIC"), and is authorized to do business in the State of Illinois.

### STATEMENT OF FACTS
### TCF'S WILLFUL VIOLATIONS OF 11 U.S.C. §§ 362 & 524

5. On or about June 1, 2008, Debtor obtained a loan ("subject debt") from TCF to fund the purchase of the property located at 25001 Armstrong Lane, Plainfield, Illinois 60585 ("subject property").

6. Debtor granted TCF a mortgage on the subject property to secure the subject debt.

7. Prior to filing bankruptcy, Debtor defaulted on the subject debt.

8. On April 29, 2014, Debtor filed for relief under Chapter 7 of Title 11 of The United States Code, case number 14-16136, invoking the protection s of the automatic stay. *See* attached Exhibit A, a true and correct copy of the Notice of Bankruptcy Filing.

9. TCF was duly disclosed on Schedule D of Debtor's bankruptcy petition as a secured creditor for the mortgage on the subject property. *See* attached Exhibit B, a true and correct copy of Schedule D of Debtor's bankruptcy petition.

10. On April 30, 2014, and as a direct result of TCF being listed as a creditor in Debtor's bankruptcy schedules, the Bankruptcy Noticing Center ("BNC") served TCF with the Notice of the Meeting of Creditors. *See* attached Exhibit C, a true and correct copy of the BNC's Certificate of Notice of Meeting of Creditors establishing service of the Notice of Bankruptcy Filing upon TCF.

11. On June 30, 2014, the Meeting of Creditors was held.

12. No representative from TCF was present at the Meeting of Creditors.

13. On July 15, 2014, TCF sent Debtor a mortgage statement informing her that she is in default on her mortgage and included a payment slip to be detached and sent to TCF with one of two payment options to come current on the subject debt. *See* attached Exhibit D, a true and correct copy of the July 15, 2014 mortgage statement sent to Debtor by TCF.

14. The July 15, 2014 mortgage statement listed the amount of $22,942.06 as the total amount due and $19,498.69 as the minimum amount due. *Id.*

15. The July 15, 2014 mortgage statement also threatens additional fees and foreclosure if the account is not brought current. *Id.*

16. On July 15, 2014, TCF filed foreclosure on the subject property, case number 14 CH 001550. *See* Exhibit E, a true and correct copy of the Alias Summons and Complaint filed in the foreclosure.

17. TCF did not file a motion to lift the Automatic Stay prior to filing the foreclosure case.

18. On August 14, 2014, TCF sent Debtor another mortgage statement. *See* attached Exhibit F, a true and correct copy of the August 14, 2014 TCF mortgage statement.

19. The August 14, 2014 mortgage statement demanded $24,703.23 as the total amount due and $21,259.86 as the minimum amount due. *Id.*

20. The August 14, 2014 mortgage statement also threatens additional fees and foreclosure if the account is not brought current. *Id.*

21. On August 18, 2014, Debtor received a discharge in her bankruptcy. *See* Exhibit G, a true and correct copy of the Discharge Order.

22. Also on August 18, 2014, the BNC sent notice of the Order of Discharge to TCF. *See* Exhibit H, a true and correct copy of the BNC Notice of the Order of Discharge.

23. On September 12, 2014, TCF sent Debtor another mortgage statement. *See* attached Exhibit I, a true and correct copy of the September 12, 2014 TCF mortgage statement.

24. The September 12, 2014 mortgage statement demanded $26,464.40 as the total amount due and $23,021.03 as the minimum amount due. *Id.*

25. The September 12, 2014 mortgage statement also threatens additional fees and foreclosure if the account is not brought current. *Id.*

26. On November 14, 2014, TCF sent Debtor another mortgage statement. *See* attached Exhibit J, a true and correct copy of the November 14, 2014 TCF mortgage statement.

27. The November 14, 2014 mortgage statement demanded $30,074.79 as the total amount due and $26,543.37 as the minimum amount due. *Id.*

28. The November 14, 2014 mortgage statement also threatens additional fees and foreclosure if the account is not brought current. *Id.*

29. On December 12, 2014, TCF sent Debtor another dunning letter titled, "First Past Due Notice." *See* Exhibit K, a true and correct copy of the December 12, 2014 dunning letter.

30. The December 12, 2014 dunning letter stated: "Your monthly payment has not yet been received. The 'amount due' listed above is due immediately. Any further delay may adversely affect your credit." *Id.*

31. The December 12, 2014 dunning letter listed a past due amount of $26,543.37 and a total amount due of $29,644.79. *Id.*

32. On December 15, 2014, TCF sent Debtor another mortgage statement. *See* attached Exhibit L, a true and correct copy of the December 28, 2014 mortgage statement.

33. The December 15, 2014 mortgage statement demanded $31,924.01 as the total amount due and $28,304.54 as the minimum amount due. *Id.*

34. The December 15, 2014 mortgage statement also threatens additional fees and foreclosure if the account is not brought current. *Id.*

35. On January 12, 2015, TCF sent Debtor another dunning letter similar to the December 12, 2014 dunning letter. *See* Exhibit M, a true and correct copy of the January 12, 2015 dunning letter.

36. The January 12, 2015 dunning letter listed a past due amount of $28,304.54 and a total amount due of $31,582.06. *Id.*

37. On January 14, 2015, TCF sent Debtor another mortgage statement. *See* attached Exhibit N, a true and correct copy of the January 14, 2014 mortgage statement.

38. The January 14, 2015 mortgage statement demanded $33,773.23 as the total amount due and $30,065.71 as the minimum amount due. *Id.*

39. The January 14, 2015 mortgage statement also threatens additional fees and foreclosure if the account is not brought current. *Id.*

40. On February 13, 2015, TCF sent Debtor another mortgage statement. *See* attached Exhibit O, a true and correct copy of the February 13, 2015 TCF mortgage statement.

41. The February 13, 2015 mortgage statement demanded $35,622.45 as the total amount due and $31,826.88 as the minimum amount due. *Id.*

42. The February 13, 2015 mortgage statement also threatens additional fees and foreclosure if the account is not brought current. *Id.*

43. On March 5, 2015, the subject property was sold at foreclosure sale to TCF for a sum of $277,537.56. *See* Exhibit P, a true and correct copy of the Motion for Order Approving Report of Sale and Distribution, Receipt of Sale, and Sheriff's Certificate of Sale.

44. On March 13, 2015, TCF sent Debtor another dunning letter titled, "First Past Due Notice." *See* Exhibit Q, a true and correct copy of the March 13, 2015 dunning letter.

45. The March 13, 2015 dunning letter stated: "Your monthly payment has not yet been received. The 'amount due' listed above is due immediately. Any further delay may adversely affect your credit." *Id.*

46. The March 13, 2015dunning letter listed a past due amount of $31,826.88 and a total amount due of $35,192.45. *Id.*

47. Concerned over the violations of her rights and protections afforded by the automatic stay and her Chapter 7 discharge, Debtor sought the assistance of counsel to ensure that TCF's collection efforts cease.

## LEGAL STANDARD

48. The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007).

49. Pursuant to 11 U.S.C. § 524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts.

50. "The automatic stay and discharge injunction are cornerstones of bankruptcy law. They are, respectively, a fundamental debtor protection and a fundamental debtor objective. The automatic stay assists debtors in regaining their financial footing by allowing them to do so free from collection efforts. And, having successfully completed the bankruptcy process, discharge provides debtors with a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. But the automatic stay and discharge injunction must be enforced to provide any meaningful protection or incentive." *In re Curtis*, 322 B.R. 470, 483 (Bankr.D Mass.2005).

51. Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001).

52. "If the court finds that the creditor received notice of the discharge in bankruptcy, then the debtor will have to prove only that the creditor intended the actions which violated the injunction." *Faust v. Texaco Ref. and Mktg, Inc.*, 270 B.R. 310, 315 (Bankr.M.D.Ga.1998).

53. Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so. *In re Wagner*, 74 B.R. 898, 903-904 (Bankr.E.D.Pa.1987).

54. Punitive damages are especially appropriate when a party has acted in "arrogant defiance" of the Bankruptcy Code. *In re Medlin*, 201 B.R. 188, 194 (Bankr.E.D.Tenn.1996).

55. In determining if punitive damages are appropriate, the court has looked to (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; (4) any provocation by the debtor; as well as (5) the creditor's sophistication and knowledge of bankruptcy law and procedure. *In re Sumpter*, 171 B.R. 835, 845 (Bankr.N.D.Ill.1994).

56. "Additionally, the Court may impose monetary sanctions as a coercive measure to ensure the creditor's future compliance with the discharge injunction. Sanctions to coerce a creditor to cease violating the discharge injunction are an appropriate use of contempt sanctions." *In re McLean*, 2013 WL 5963358 at *4 (Bankr.M.D.Ala.2013).

**ARGUMENT**

57. The Debtor was granted a discharge August 21, 2014.

58. All of the misconduct complained herein occurred after the Debtor was protected by the Automatic Stay and the Discharge Injunction.

59. There is no question that TCF had notice of the Debtor's bankruptcy filing as it received actual notice of the bankruptcy on multiple occasions.

60. TCF was apprised of Debtor's bankruptcy on the following occasions:

    a. The BNC service of the Notice of the Meeting of Creditors upon TCF on April 30, 2014. *See* Exhibit C;

    b. The BNC service of the Discharge Order upon TCF on August 18, 2014. *See* Exhibit H.

61. Despite having notice and actual knowledge of the automatic stay, TCF failed to cease collection efforts as evidenced by the foreclosure action and statements sent to Debtor.

62. Despite the notices of the bankruptcy filing and subsequent discharge, TCF continues to attempt to collect the discharged debt from the Debtor in brazen violation of the discharge injunction.

63. TCF, as a highly sophisticated and experienced creditor, should have implemented procedures and trained their employees to discourage and prevent willful violations of the automatic stay and discharge order. However, the egregious conduct by TCF, at Debtor's expense, establishes otherwise.

64. TCF's actions in attempting to collect the uncollectable and subsequently discharged debt are deliberate, unlawful, and egregious in nature.

65. TCF's actions are egregious given the frequency and regularity of its willful violations of the automatic stay and the discharge order.

66. TCF has failed to cease collection efforts as mandated by the discharge order despite receiving notice of Debtor's bankruptcy through the BNC, leaving Debtor no alternative other than to seek judicial enforcement of the discharge order.

67. The onus of compliance with the procedures and protections afforded by the Bankruptcy Code is on the highly sophisticated creditor.

68. Upon information and belief, TCF regularly and systematically engages in collection activity in direct violation of the automatic stay and the discharge order.

69. This pattern and practice of routinely violating the automatic stay and the discharge injunction in disregard of the Bankruptcy Code demonstrates egregious behavior in arrogant defiance of Federal Law.

### DAMAGES

70. Debtor has and continues to suffer emotional distress and anxiety as a direct result of TCF's unlawful collection practices as Debtor was led to believe her bankruptcy filing was futile.

71. Debtor has been unduly inconvenienced and harassed by TCF's unlawful attempts to collect a discharged debt.

72. Debtor has expended time consulting with her attorneys as a result of TCF's deceptive collection actions.

73. To protect its authority, and to give Debtor the relief that Congress contemplated, this Honorable Court should act promptly and firmly to stop conduct that violates 11 U.S.C. §§ 362 and 524 as to not render the automatic stay and discharge injunction obsolete and optional.

74. Furthermore, coercive actions are warranted here to encourage TCF to take a fresh look at their internal procedures to ensure they are designed to prevent violations of 11 U.S.C. §524.

75. In order to protect the spirit of the automatic stay and the discharge order as contemplated by Congress, this Court must impose civil contempt sanctions against TCF for its brazen disregard of this Court's orders, including actual damages, punitive damages, costs, and fees.

**WHEREFORE,** Sofia Palma, having set forth her claims for relief against TCF National Bank, respectfully prays of the Court as follows:

a. That this Honorable Court enter an order enjoining TCF National Bank from attempting to collect the discharged debt from Debtor;
b. That this Honorable Court enter an order directing TCF National Bank to pay $10,000.00 to Debtor for actual damages for violations of 11 U.S.C. §§ 362 and 524;
c. That this Honorable Court enter an order directing TCF National Bank to pay $20,000.00 to Debtor for punitive damages for violations of 11 U.S.C. §§ 362 and 524;
d. That this Honorable Court enter an order directing TCF National bank to pay a sum determined by the Court to Debtor for all reasonable legal fees and expenses incurred by her attorneys for violations of 11 U.S.C. §§ 362 and 524; and
e. That Debtor be provided such other and further relief as the Court may deem just and proper.

Dated: April 1, 2015              Respectfully Submitted,

/s/ Mohammed O. Badwan
Mohammed O. Badwan, Esq., ARDC#: 6299011
*Counsel for Debtor*
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone: (630) 575-8181
Fax: (630) 575-8188